IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DONALD G. DALTON,

        Plaintiff,

v.                                                                     CIVIL ACTION NO. 2:18-cv-01494

THE DOW CHEMICAL COMPANY, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

I.     Introduction

Pending before the court is a Motion to Stay Litigation Pending Arbitration [ECF No. 31] filed by Third-Party Defendant Austin Industrial Specialty Services, Inc. ("Austin"). For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part**. The court imposes a limited stay, as detailed below.

II.    Background

On May 3, 2018, the plaintiff filed a Complaint in the Circuit Court of Kanawha County, West Virginia relating to an injury he incurred while employed by Austin. The Complaint [ECF No. 1-1] alleges as follows: The plaintiff worked for Austin as an A-mechanic. In May 2016, the plaintiff was working at a chemical plant operated by Defendant and Third-Party Plaintiff Bayer CropScience, LP ("Bayer") under a

labor services contract Austin maintained with Bayer.[1] On May 4, 2016, at Bayer's direction, the plaintiff was moving materials down a set of stairs with a Bayer employee. The Bayer employee allegedly lost control of the materials causing them to fall on and severely injure the plaintiff.

The plaintiff subsequently filed a worker's compensation claim with Austin and was placed on leave by his physician. In June 2016, the plaintiff's physician released him to light duty at work. The plaintiff alleges that despite Austin's representations, Bayer told the plaintiff that no light duty was available and that he was not allowed at the plant. Austin then fired the plaintiff on or about July 29, 2016. The plaintiff maintains that Austin fired him at least in part based on Bayer's insistence.

The Complaint asserts five causes of action. Count One asserts a cause of action for negligence against Defendants Dow Chemical Company ("Dow"), Union Carbide Corporation ("Union Carbide"), and Bayer, alleging that these defendants, "as owners and/or operators of the plant[,] were under a duty to ensure that employees under their supervision and control conducted work related activities in a prudent and safe manner." Compl. [ECF No. 1-1] ¶ 46. Count Two asserts a violation of the West Virginia Workers' Compensation Act against Austin. Counts Three and Four allege, respectively, disability and age discrimination under the West Virginia

---

[1] The plaintiff notes that "[p]rogress of the case may reveal that the plant was, at the relevant time, operated by defendant Dow Chemical Corporation, defendant Union Carbide Corporation, and/or Bayer." Pl.'s Resp. [ECF No. 35] 2.

2

Human Rights Act ("WVHRA") against Austin. Count Five alleges that Defendants Dow, Union Carbide, and Bayer "aided, abetted, incited, compelled and/or coerced" Austin to engage in unlawful discriminatory conduct in violation of the WVHRA. *Id.* ¶ 68.

In November 2018, the plaintiff and Austin entered into a Joint Stipulation and Order of Dismissal Without Prejudice [ECF No. 1-2], whereby the plaintiff voluntarily dismissed all claims asserted against Austin pursuant to the Federal Arbitration Act ("FAA"). Arbitration proceedings between the plaintiff and Austin are still ongoing. Accordingly, only Counts One and Five remain.

In December 2018, Bayer removed the case to this court. On March 8, 2019, this court granted Bayer leave to file its Third-Party Complaint [ECF No. 22] against Austin. Bayer's Third-Party Complaint asserts a sole cause of action against Austin for contribution, stating: "Should a judgment be entered against [Bayer] on the claim in Count V of the Complaint, [Bayer] is entitled to contribution from Austin in an amount based on Austin's respective fault." Third-Party Compl. [ECF No. 22] ¶ 10. On May 3, 2019, Austin answered the Third-Party Complaint and filed the instant Motion, seeking a stay of this entire action pending the outcome of arbitration.

### III. Legal Standard

The decision whether to grant a stay is discretionary, and within the inherent power of the court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299

3

U.S. 248, 254 (1936). Proper use of this discretion "calls for the exercise of judgment which must weigh competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). In other words, the court should consider whether the movant has demonstrated "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay" will harm someone else. *Id.* (quoting *Landis*, 299 U.S. at 255). Thus, this court has identified three factors to consider in determining whether to grant a motion to stay: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 844 (S.D. W. Va. 2008) (Goodwin, J.) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).

Moreover, "district courts have the power to stay claims against a non-arbitrating party when a case involves both arbitrating and non-arbitrating parties." *Chapman-Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, No. 2:11-cv-00563, 2011 WL 5999868, at *4 (S.D. W. Va. Nov. 30, 2011). "Enforcement of agreements to arbitrate under the [FAA] may require piecemeal litigation, and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (citations

4

omitted). However, "litigation on the non-arbitrable issues which depend on arbitrable issues should be stayed pending arbitration." *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992).

## IV. Discussion

Austin seeks a stay of this entire action pending arbitration. While the plaintiff does not object to a stay of Bayer's contribution claim against Austin, the plaintiff does object to a stay of any other claims in this proceeding. The court finds a limited stay warranted: The *Tolley* factors weigh in favor of staying only (1) the plaintiff's WVHRA claims set forth in Count Five and (2) Bayer's contribution claim against Austin. The court declines to stay the plaintiff's negligence claims in Count One.

### a. WVHRA and Contribution Claims

The court begins with the plaintiff's WVHRA claims set forth in Count Five. Count Five alleges that Defendants Dow, Union Carbide, and Bayer "aided, abetted, incited, compelled and/or coerced" Austin to engage in unlawful discriminatory conduct in violation of section 5-11-9(7)(a) of the WVHRA. Compl. ¶ 68. Bayer and Austin contend that this claim should be stayed because it is dependent on an arbitrable issue—that is, Austin's liability under the WVHRA. The plaintiff counters that this claim should not be stayed because "Bayer's liability under the [WV]HRA does not hinge on whether Austin is also liable." Pl.'s Resp. 4. The court finds that Count Five is dependent on an arbitrable issue and accordingly stays this claim pending arbitration.

5

Bayer and Austin argue that the plain language of the WVHRA provides that one party must engage in an unlawful discriminatory practice in order for another party to commit their own unlawful discriminatory practice by aiding and abetting the original party in its original behavior, and the court agrees. Section 5-11-9(7)(a) provides that "[i]t shall be an unlawful discriminatory practice" for "any person, employer, employment agency, labor organization, [or] owner" to:

> Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section.

W. Va. Code § 5-11-9(7)(a). According to the plaintiff, because the statute states that it is a violation to engage in activities of any nature "the purpose of which" is to aid or abet any person to engage in an unlawful discriminatory practice, there is no requirement that Austin actually engaged in the alleged discriminatory conduct for the remaining named defendants to be found liable.

The plaintiff's reading, however, is contrary to West Virginia law. In *Michael v. Appalachian Heating, LLC*, the Supreme Court of Appeals of West Virginia held that section 5-11-9-(7)(A) "establishes three *distinct* causes of action." Syl. Pt. 5, 701 S.E. 2d 116 (W. Va. 2010) (emphasis added). Specifically, it shall be an unlawful discriminatory practice for any person to:

> (1) engage in any form of threats or reprisal, or; (2) engage in, or hire, or conspire with others to commit acts or

6

> activities of any nature, *the purpose of which* is to harass, degrade, embarrass or cause physical harm or economic loss, or (3) *aid, abet*, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in W. Va. Code § 5-11-9."

*Id.* (emphasis added).

Accordingly, the "purpose of which" language does not modify the third, distinct cause of action which the plaintiff brings here—namely, the aiding or abetting claim. As such, the plaintiff cannot rely on this language to demonstrate that his claim is not dependent on Austin committing an unlawful discriminatory practice.

Moreover, courts have held that have held that section 5-11-9(7)(A) "provides for a cause of action against individuals who aid and abet *an unlawful discriminatory act.*" *Larry v. Marion Cnty. Coal Co.*, No. 1:15-cv-212, 2018 WL 648371, at 9 (S.D W. Va. Jan. 31, 2018) (emphasis added). Therefore, the plaintiff's aiding and abetting claim is viable only if there was an underlying unlawful discriminatory act. *See id.* at *10 ("West Virginia's highest court has previously applied the Restatement [(Second) of Torts § 876(b)] holding that '[f]or harm resulting to a third person from *the tortious conduct of another*, one is subject to liability if he knows that the *other's conduct* constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.'") (quoting Syl. Pt. 2, *Barath v. Performance Trucking Co.*, 424 S.E.2d 602 (W. Va. 1992)) (emphasis added).

Because the plaintiff is currently arbitrating the issue of whether Austin's termination of the plaintiff violated the WVHRA, the plaintiff's aiding and abetting

7

claim "depend[s] on an arbitrable issue."[2] *Summer Rain*, 964 F.2d at 1461. Accordingly, it "should be stayed pending arbitration." *Id.* The *Tolley* factors also support such a stay. The interests of judicial economy will be promoted by staying the plaintiff's WVHRA claims as set forth in Count Five. One of the central issues in both Count Five and in arbitration is whether Austin's termination of the plaintiff was in violation of the WVHRA. For this reason, this claim and the arbitration will likely require taking the depositions of the same witnesses regarding the same factual disputes and require written discovery of the same evidence. Second, Austin will be prejudiced if this claim is not stayed, given that it would likely need to duplicate its work product and discovery efforts. Last, because this claim is dependent on the outcome of arbitration proceedings, the court finds that the plaintiff would not be prejudiced by a stay of Count Five. For these reasons, the court stays the plaintiff's WVHRA claims set forth in Count Five pending arbitration.

Next, the court finds—and the parties do not dispute—that Bayer's contribution claim against Austin should likewise be stayed pending arbitration. Bayer's Third-Party Complaint asserts only a claim of contribution against Austin, alleging that if Bayer is found liable on Count Five, it is entitled to contribution from Austin based on Austin's respective fault.

---

[2] "A body of West Virginia case law has evolved over the years that mandates arbitration awards be recognized as binding and final as to the matters presented." *Rashid v. Schenck Constr. Co.*, 438 S.E.2d 543, 547 (W. Va. 1993).

8

As noted above, for Bayer to be found liable for Count Five, the plaintiff must first prove that Austin terminated the plaintiff for a reason prohibited by the WVHRA. Thus, the non-arbitrable contribution claim is wholly contingent upon a finding of fault against Austin in arbitration. Because the non-arbitrable contribution claim depends on an arbitrable issue, it "should be stayed pending arbitration." *Summer Rain*, 964 F.2d at 1461.

The *Tolley* factors also weigh in favor of staying Bayer's contribution claim. First, the interests of judicial economy are served by such a stay. Bayer cannot proceed with its contribution claim unless and until Austin is found at fault in arbitration. Moreover, the court finds that Austin would be prejudiced if Bayer's contribution claim were not stayed and that there is no prejudice to the plaintiff, given that the plaintiff has agreed to a stay of this claim. Accordingly, the court stays Bayer's contribution claim against Austin pending arbitration.

### b. Negligence Claim

Bayer and Austin contend that the plaintiff's negligence claims should also be stayed pending arbitration even though the parties agree that the claims are not dependent on an arbitrable issue. The court finds that the *Tolley* factors weigh against a stay of the plaintiff's negligence claims as set forth in Count One.

The plaintiff asserts a cause of action for negligence against Defendants Dow, Union Carbide, and Bayer, alleging that these defendants, "as owners and/or operators of the plant[,] were under a duty to ensure that employees under their

9

supervision and control conducted work related activities in a prudent and safe manner." Compl. ¶ 46. This cause of action relates to injuries the plaintiff allegedly suffered when materials fell on him at work and in no way relates to a claim of unlawful discriminatory conduct. Thus, regardless of the outcome of the pending arbitration proceedings, the negligence count will still have to be litigated. For these reasons, judicial economy does not weigh in favor of a stay. Further, Austin, the moving party, will not be prejudiced if the negligence claims proceed: Austin is not named in the negligence count, and the claim is not dependent on any issue in arbitration. In addition, the plaintiff would be unnecessarily prejudiced by a stay of the negligence count. The plaintiff emphasizes, and the court agrees, that a stay of the negligence cause of action would cause evidence to become stale for no legitimate reason. Based on these factors, the court declines to stay this litigation as it relates to the plaintiff's negligence claims in Count One.

V. Conclusion

For the foregoing reasons, Austin's Motion to Stay Litigation Pending Arbitration [ECF No. 31] is **GRANTED in part** and **DENIED in part**. The court **STAYS** this litigation and discovery *only* as it relates to the plaintiff's WVHRA claims set forth in Count Five and Bayer's contribution claim against Austin. Austin's Motion is otherwise **DENIED**. The parties are **DIRECTED** to file a joint status report within **ten (10)** days of the conclusion of arbitration proceedings.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

                        ENTER:      June 10, 2019

                        JOSEPH R. GOODWIN
                        UNITED STATES DISTRICT JUDGE